# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **THERAPY PRODUCTS, INC.** | § | |
| **d/b/a ERCHONIA MEDICAL** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No.: 07 CV 8696 (DLC)** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LIONEL BISSOON, M.D.,** | § | |
| **d/b/a MESOTHERAPIE & ESTETIK,** | § | |
| **MERIDIAN AMERICA MEDICALS, INC.** | § | |
| **MERIDIAN MEDICAL INC, and** | § | |
| **MERIDIAN CO., LTD.** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF THERAPY PRODUCTS, INC. d/b/a ERCHONIA'S OPPOSITION TO
MOTION FOR COSTS AND STAY OF PROCEEDINGS PURSUANT TO RULE 41(d)**

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................. 2

III.    ARGUMENT ....................................................................................................... 7

       A.   Plaintiff's Voluntary Dismissal in Texas and
           Refiling In New York was with "Good Cause" and Not
           Vexatious or "Forum Shopping" ................................................................. 7

           1.   Erchonia had a valid reason for dismissing the Texas Action .............................. 7

           2.   Erchonia's conduct of the Texas Action was not Vexatious ................................ 8

           3.   Erchonia achieved substantial results in the Texas Action ................................. 12

       B.   The New York Action Seeks Further Relief By Adding
           A Party Unavailable During The Texas Action
           And Significant Additional Relief ................................................................ 12

       C.   Meridian has Unclean Hands and Plaintiff will be
           Irreparably Harmed if a Stay is entered until The Defendant's
           Unsubstantiated Attorney's Fees are Paid .................................................... 13

       D.   Meridian Has Not Established A Basis
           To Determine Any Fees And Costs or Their Reasonableness ......................... 15

IV.     CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

CASES                                                                                                            Pages(s)

*Activox, Inc. v. Envirotech Corp.*,
   532 F. Supp. 248 (S.D.N.Y. 1981)…………………………………………….......9

*Behrle v. Olshansky*,
   139 F.R.D. 370 (W.D.Ark., 1991)……………………………………………...…8

*Eskofot A/S v. E.I. Du Pont*,
   872 F. Supp. 81 (S.D.N.Y. 1995) applying FRCP 4(k)(2)……………………….…3, 10

*Esquivel v. Arau*,
   913 F. Supp. 1382 (C.D. Cal, 1996)…………………………………………….…...16

*Kern v. TXO Prod. Corp.*,
   738 F.2d 968 (9th Cir. 1984)………………………………………………………….8

*New Phone Co., Inc v. New York City Dept. of Info. Tech and Telecom.*,
   No. 06 CV 3529, 2007 WL 2908110 (E.D.N.Y. Oct 5, 1981)………………………….9

*Robinson v. Nelson*,
   1999 U.S. Dist. LEXIS 2004, 5-6 (D. Mass. Feb. 18, 1999)………..………………8, 9, 14

*Sewell v. Wal-Mart Stores, Inc.*,
   137 F.R.D. 28 (D. Kan. 1991)………..……………..……………………………11, 14

*Simeone v. First Bank Nat. Ass'n.*,
   971 F.2d 103 (D. Minn. 1992)………………………………………………....9, 13

*Stiftung v. Sumitomo Corp.*,
   No. 99 CV 1108, 2001 WL 1602118 (S.D.N.Y. Dec 14, 2001)…………………………..9

*Young v. Dole*,
   No. 90 CV 2667, 1991 WL 158977 (E.D.N.Y. July 11, 1991)………………………...10

*Zucker v. Katz*,
   708 F. Supp. 525 (S.D.N.Y. 1989)…………….……………………………7, 10, 13

STATUTES

Federal Rule of Civil Procedure 4(k)(2)...……………………………………………..3, 15

Federal Rule of Civil Procedure 41(b)……………………………………………………..15

Federal Rule of Civil Procedure 41(d)………………………………………………....passim

# I.  INTRODUCTION

Korean Defendant Meridian Co.'s motion for over $120,000 in fees and request for a stay of proceedings is a cynical attempt to delay resolution on the substance of its clear trademark infringement.  Although Meridian Co. ("Meridian") has known of this issue since the day the suit was filed, indeed since the dismissal of the initial suit filed by Erchonia ("the Texas Action"), not a word was mentioned to opposing counsel or the Court at the initial management scheduling conference of a need for reimbursement before suit could proceed.  Nor was any request made in the Texas Action for such fees.  This is particularly troubling because undisputable facts clearly reveal that Meridian, in lieu of responding to the merits of this suit, now attempts to exploit a perceived tactical advantage, while simultaneously having the same attorneys litigate this lawsuit on the behalf of the other defendants, directly contradicting the notion that a second suit was burdensome.  Meridian's request is dilatory, unsubstantiated with redacted proof, and worse, contrary to the very purposes of the Rule and its application by other courts in this district and elsewhere.

Rule 41(d) is not properly applied when the first suit is dismissed for a valid reason.  The underlying purpose of the rule is to penalize litigants who are vexatious, are forum shopping, and/or are seeking dismissal to avoid a substantive adverse ruling, and who then refile to obtain a tactical advantage.  Nothing of the sort is presented here.  Erchonia's dismissal was proper, in good faith and done for legitimate reasons.  After sitting on this issue for almost an entire year, Meridian should not be permitted to turn a routine dismissal without prejudice on a flimsy motion to dismiss into a $120,000 penalty, especially when much of these fees were directly caused by Meridian's conduct in the previous action or relate to activities directly applicable to the defense of this suit.

# II. FACTUAL BACKGROUND

On February 28, 2007, Erchonia Medical ("Erchonia") filed a trademark infringement action in the Northern District of Texas against three known defendants, Meridian, its first medical spokesperson, Dr. Roman Chubaty ("Chubaty"), and his company Aesthetic MD.[1] Erchonia initially filed this suit in the Northern District of Texas based upon Meridian's and their medical researcher Dr. Chubaty's contacts with the State of Texas—namely the use and training of doctors using a machine bearing the Erchonia trademark Lipolaser, but manufactured by defendant Meridian[2]. The infringing use of the trademark in Texas provided a jurisdictional basis against Meridian, as well by having placed such a product in the stream of commerce and in the hands of its medical researcher and promoter, Dr. Chubaty. See Declaration of James D. Petruzzi (hereinafter "JDP Decl.") Exh. B. Erchonia, through the Hague Convention, attempted service of process on Meridian via hand delivery on a facility in Vancouver Canada.[3] Although it later became apparent to Erchonia's former counsel that Meridian Medical, was a separate entity, it was reasonable to believe that Meridian was operating under the name of Meridian Medical in Canada. Indeed, Dr. Chubaty had been told by Meridian Medical that it was publicly traded, although at the time, only Meridian Korea was a publicly traded company. See JDP Decl. Exh. G, pp. 31-33. Additionally, further confusion existed on the behalf of the public as

---

[1] Neither counsel of record in this suit were engaged in the Texas Action until new counsel substituted in and shortly thereafter dismissed the suit.

[2] Meridian makes much of the filing of an amended complaint to change the original cause of action from one involving a "registered" mark to a common law mark. At the time suit was filed, Erchonia had obtained a notice of allowance of its trademark registration which would have issued in due course but for an opposition proceeding filed two months after suit by Meridian Co. For purposes of the Texas Action, Erchonia's trademark rights against Meridian were unaffected and this had little bearing on the fees expended by Meridian.

[3] If Meridian Co. was a Canadian company, hand delivery would be appropriate from any process server in the U.S., which was the method of service on Canadian Defendant, Meridian Medical, Inc. in this suit.

press releases issued by Meridian that identified the Meridian Medical's website and phone number as a common point of contact. See, e.g. JDP Decl., Exh. F.

Under Federal Rule of Civil Procedure Rule 4(k)(2), the Korean national, Meridian, was subject to personal jurisdiction in the Northern District of Texas due to its nationwide contacts, as there was no single district in the U.S. at that time that had the kind of systematic contacts required for personal jurisdiction.[4] However, instead of producing the requisite documents detailing such contacts, which have since become available in this lawsuit, Meridian knowingly misled the Northern District of Texas, and filed a form book motion to dismiss that denied any contacts *in Texas*.

Meridian filed a misleading motion to dismiss and then thwarted discovery into jurisdictional facts while knowing it had extensive U.S. contacts, rather than be forthcoming as to its U.S. activities which had the result of running up fees.[5] Had Meridian been upfront, Erchonia's former counsel would have learned, as undersigned counsel have here, that Meridian had had numerous contacts throughout the U.S.—attendance at trade shows, creation of a majority owned U.S. subsidiary in Los Angeles, visits to that subsidiary, the use of two medical spokesperson doctors to promote their product in the U.S., and visits to New York to raise financing to offer shares to the public. JDP Decl., Exhs. B, F, G, and H. Other than the existence of the first doctor spokesperson and possibly a trade show attendance, none of these facts were adduced in the Texas Action, but surely were known to Meridian. They were, rather artfully presented in a form book motion to dismiss that alleged lack of contacts such as "no office," "no property ownership," no Texas contracts," "no bank accounts," "no travel," and "no

---

[4] See e.g. *Eskofot A/S v. E.I. Du Pont*, 872 F. Supp. 81 (S.D.N.Y. 1995) applying FRCP 4(k)(2).
[5] Meridian is sure to argue that it was Erchonia's burden to establish jurisdiction under Rule 4(k)(2), but this misses the point. Meridian precipitated a dispute over jurisdiction even though it was in possession of the true facts establishing a jurisdictional basis to go forward in the Texas Action.

sales" *in Texas* etc. all the while hiding the truth about their extensive national contacts. Castello Decl. Exh. C, Ex 1, Declaration of Hyeong-Seong Myeong.  Meridian chose to hide everything but what was set forth in the Myeong Declaration, forcing Erchonia to file an emergency motion in an effort to obtain proper jurisdictional discovery, as Meridian refused voluntary discovery based on jurisdictional facts.  It was Meridian that chose to hide the ball and then obstructed discovery into pertinent facts that caused both sides needless expense.

During the time new counsel was being consulted, the undersigned learned that the parties had engaged in substantial settlement discussions whereby Meridian initially agreed to stop using the Lipolaser mark.  JDP Decl, ¶5.  On August 31, 2007, Erchonia's President, Steven Shanks, emailed the South African distributor for Meridian regarding the trademark and Erchonia's demand that Meridian stop infringement.  Id.  In response, the distributor assured Erchonia that it "will only be using the name LAPEX 2000 in promoting, communicating, marketing and selling the device."  Id.  Further the email states that "this is the directive we have received from our business partners" referring to Meridian.  JDP Decl., Exhibit C.  At or about this time frame, Erchonia also believed that the Texas Action had accomplished one of its goals, i.e. to get Meridian to stop using the Lipolaser trademark and had obtained an injunction against Dr. Chubaty.  Erchonia was then shown a proposed settlement agreement that was being exchanged between the parties' counsel that included numerous additional terms to which Erchonia could not agree.  JDP Decl., ¶5.  Erchonia also learned that, contrary to its representations, Meridian had not stopped its infringement and was misleading Erchonia during the settlement discussions.  Id.  At that point, it became clear that the case which appeared to be headed for settlement was not going to be resolved.  Id.

Although former counsel may have clumsily pursued service, a significant result was nevertheless achieved in the Texas Action through Dr. Chubaty's enjoinment and ultimate resignation as a spokesperson and medical endorser of Meridian's product.  JDP Decl., Exh. A. In the interim, and unknown to former counsel, Meridian had been negotiating with a new doctor spokesperson, Dr. Bissoon, and ultimately entered into a contract whereby he agreed to provide his endorsement for shares in the Korean company and a per unit commission for all sales of the unit.  JDP Decl. ¶6.  Given the expenses of pursuing jurisdiction in Texas, caused in large part by Meridian's obstinacy, and with a new claim against Dr. Bissoon and a clearer jurisdictional basis in New York, due to the changed circumstances, Plaintiff reasonably dismissed the Texas Action without prejudice, and pursued these substantially new claims in New York.  Not only had Meridian engaged a new medical spokesperson in New York, Dr. Bissoon, but the gravamen of the complaint focused significantly on Meridian's false advertising, improper use of clinical data and scientific studies developed around the Erchonia products, false claims of FDA approval and misleading and false use of doctor studies, photos and alleged clinical studies to promote their product.  Many of the now available facts occurred well after the Texas Action was initiated and only came to light during discovery in this action.  Out of an abundance of caution and in the interest of judicial economy, and after discovering that Meridian Medical and Meridian engaged a new medical spokesperson out of New York, to avoid further frivolous delay and future contests based on personal jurisdiction, Erchonia voluntarily dismissed in Texas and refiled in the Southern District of New York, adding Dr. Lionel Bissoon and a count of false advertising to the complaint.  New York was not only the location of Dr. Bissoon, but the location of Defendants' attorneys, and as admitted by all Defendants, a forum in which they all conducted business.  Erchonia gains no tactical advantage; instead, quite the opposite, it abandons the more

convenient forum to it in Texas and brings suit 1500 miles away in its opponents' attorneys' back yard.

Undoubtedly, the two complaints bear some similarity—they both allege straightforward claims for trademark infringement which in all cases carry similar allegations. That the same trademark is at issue is not determinative of this motion. Rather, the New York suit, far from being the same suit, pursues an entirely new infringement through Dr. Bissoon and his participating in the false advertising and promotion which relies on unsubstantiated data that was developed after the Texas Action was filed. See e.g. JDP Decl., Exhs. D and E.

Meridian's dilatory conduct in this motion is not the first time it has used misdirection to its tactical advantage. The Court will recall that it ordered the parties to mediation in early June. For a variety of reasons mediation was not scheduled until July 1. In the interim, the Korean defendant had been served, but Plaintiff's counsel was not aware service had been accomplished. Shortly before the July 1 mediation, defense informed the parties that its key principal in Meridian Medical, the Canadian defendant, could not attend the mediation due to health problems. Plaintiff sought unsuccessfully to postpone the mediation until such time as the principal could travel, but was denied over Defendant's objections. Defense counsel failed to advise either the magistrate or opposing counsel that Meridian was a party to the suit, having been served with the complaint and did not have a representative of Meridian attend the mediation. Rather, Meridian waited until after the mediation to file its answer, forgoing a personal jurisdictional challenge it had been asserting from inception, and instead moved for this stay and its fees. This type of blatant gamesmanship and tactical motion practice is not what Rule 41(d) was intended to remedy. Rather, had Meridian wanted such fees before going forward, this motion should have been filed at the outset. Meridian offers no reason (although it

will certainly argue it waited until the recent service of the complaint) to account for its utter

failure to bring this threshold issue to the court's attention earlier and in a timely manner.  There

is no valid reason this issue could not have raised earlier and with less burden to all parties.

## III.    ARGUMENT

### A.    Plaintiff's Voluntary Dismissal in Texas and Refiling In New York was with "Good Cause" and Not Vexatious or "Forum Shopping" for Tactical Advantage

#### 1.    Erchonia had a valid reason for dismissing the Texas Action

Rule 41(d) is purely discretionary in permitting the court to award attorney's fees or

costs.  However, this relief is reserved for those cases involving vexatious intent, forum

shopping, dismissal to gain tactical advantage, and the like.  Meridian's case, *Zucker v. Katz*, 708

F. Supp 525, explicitly affirms that costs should be refused where "it appears that there was a

good reason for the dismissal of the prior action…"  Id. at 539.

> "As clearly evident from the language of this Rule, 'the matter is discretionary
> with the court.' 9 C. Wright & A. Miller, Federal Practice and Procedure § 2375
> at 244 (1971). As a general rule, courts 'may refuse to make this requirement if it
> appears that there was a good reason for the dismissal of the prior action or that
> the plaintiff is financially unable to pay the costs.' Id. at 244"

*Zucker v. Katz*, 708 F. Supp. 525, 539 (S.D.N.Y. 1989).  Yet, Meridian hardly analyzes this key

issue only to chastise former counsel for what it contends was a "jurisdictional defect."  While

Rule 41(d) exists to discourage inequitable types of behavior by awarding court costs, Erchonia's

actions simply do not constitute such conduct.[6]  Meridian brushes aside in its motion this key

factor—Erchonia's bona fide reason to dismiss the Texas Action and refile in New York.  The

refiling in New York, where all Defendants may no longer mount frivolous attacks for lack

personal jurisdiction, is the antithesis of forum shopping.  Further, Erchonia has good cause for

---

[6] See e.g. *Simeone v. First Bank Nat'l Ass'n*, 125 F.R.D. 150, 153 (D. Minn. 1989).

voluntarily dismissing in Texas, and subsequently refiling in New York, that makes Rule 41(d) unwarranted. Erchonia firmly believes that awarding Rule 41(d) costs, are inequitable and contrary to the exercise of the Court's discretion

Although jurisdiction under a traditional minimum contacts analysis may have been difficult to establish, failure to produce the evidence of its systematic and continuous contacts throughout the U.S., in part, led to the confusion, and added costs, regarding adequate jurisdiction. Further, as is evident, the issues with service were not that surprising, given that Meridian Medical referred to itself as the publicly traded company, Meridian, and service of a Canadian by hand delivery was appropriate. Also, Erchonia was placed in a position where jurisdiction in New York against a different, and new doctor, spokesperson was required while New York as an appropriate venue, is admitted by all defendants. The dismissal was clearly for good reason and not "forum shopping" as required by the cases cited by Defendant.

### 2. Erchonia's Conduct of the Texas Action was not Vexatious

Another factor militating against awarding costs is the total lack of evidence establishing Erchonia's wrongful and improper conduct the Texas Acton. There were no tactical advantages gained by Erchonia through refling in New York, nor were there any orders or decisions it was seeking to avoid in Texas. As noted similarly in *Robinson v. Nelson,* 1999 U.S. Dist. LEXIS 2004, 5-6 (D. Mass. Feb. 18, 1999):

> "Moreover, the plaintiff appears not to have dismissed the District of Columbia litigation and refiled in Massachusetts in an effort to gain a tactical advantage. In particular, Rule 41(d) is intended to prevent plaintiffs from gaining an advantage through forum shopping, especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else. See generally *Simeone*, 125 F.R.D. at 156. For example, costs are warranted when the plaintiff takes, in the middle of a trial that is going badly, a voluntary nonsuit and refiles the case elsewhere in an effort to improve his chances of prevailing. See *Kern v. TXO Prod. Corp.*, 738 F.2d 968 (9th Cir. 1984); *Behrle v. Olshansky*, 139 F.R.D. 370, 372 (W.D.Ark., 1991). The Klebanoffs do not claim that the plaintiff dismissed

the District of Columbia action to shop for a better forum; they do not allege that the plaintiff suffered setbacks in the District of Columbia court that prompted the plaintiff to seek relief in Massachusetts instead. In fact, it appears that the defendants' responsive pleadings had not even been filed when the plaintiff dismissed the District of Columbia action. In short, the Klebanoffs offer nothing more than conclusory statements that the plaintiff's actions were vexatious forum shopping.

In conclusion, the plaintiff appears to have had a reasonable explanation for his course of conduct in this litigation, and his actions were not vexatious or designed to gain a tactical advantage. As a result, an award of costs under F.R.Civ.P. 41(d) is not appropriate."

Other cases cited by Defendants require a high degree of improper litigation activity to warrant fees on the second suit. For example, *New Phone Co. Inc. v. New York City Dept. of Info. Tech. and Telecom*, No. 06 CV 3529, 2007 WL 2908110, at *16 (E.D.N.Y. Oct. 5, 2007) application of Rule 41(d) was predicated on direct violations of court orders, simultaneous pursuit of the same claims, and after the ninth consecutive action was instituted by Plaintiff. Similarly, in *Stiftung v. Sumitomo Corp., No. 99 CIV 1108, 2001 WL 1602118 (S.D.N.Y. Dec. 13, 2001)* the Court imposed Rule 41(d) penalties against a Plaintiff who filed a suit in order to "*avoid consequences of deliberate noncompliance* [of a courts previous order]", and then refiled in state court against the same defendants and asserted the same claims. Further, the plaintiff's attorney knowingly mislead a defendant's attorney to fly to London for a deposition, and then voluntarily dismissed the suit a day later; knowingly improperly named a defendant in an amended complaint after being informed; and then lied to the court concerning his knowledge. The Plaintiff was required to pay for wasted fees in expending that time. In *Activox Inc. v. Envirtech Corp., 532 F. Supp. 248 (S.D.N.Y. 1981)* the 41(d) penalties were due to plaintiff's willful avoidance of pending litigation and attempt to sue in a forum which from the outset clearly lacked subject matter jurisdiction. Likewise in *Simeone v. Fist Bank Nat. Ass'n*, 125 F.R.D, 150 (D.Minn. 1989) *aff'd in part and vacated in part* , 971 F.2d 103 (8th Cir. 1992),

plaintiff initially sued in state court, received a unfavorable summary judgment narrowing his claims, and then before trial was to proceed, moved for voluntary dismissal without prejudice, which was granted by the state court. Plaintiff then reinstituted the same suit alleging the same claims in federal court, and was ordered to pay costs in what constituted blatant "forum shopping."

Erchonia initially filed in the Northern District of Texas, against several parties, including Meridian which was proper under a "national contacts" jurisdictional analysis.[7] Personal jurisdiction, went unchallenged by Dr. Chubaty and the only reason any fees were expended on the issue was due to Meridian's artful presentation of the issue and objections to discovery. How $120,000 in fees were expended with one deposition on jurisdictional issues and a form book motion is inconceivable. Service in Canada, although potentially incorrect, was apparently based on the mistaken belief that Meridian operated out of Canada and that Anna Brazier was an officer of the publicly traded company as she had indicated to Dr. Chubaty. JDP Decl. Exhibit G.

The addition of Dr. Bissoon and the changed facts leading to additional infringement claims, are the type of circumstances that further render Rule 41(d) costs inappropriate. In *Young v. Dole*, No. 90 CV 2667, 1991 WL 158977 (E.D.N.Y. July 11, 1991), 41(d) costs were denied after a 41(a)(2) voluntary dismissal despite the request for nearly identical relief, because the claims were based on facts which became clear after the filing of the first complaint. Also the defendant failed to show what substantial prejudice it would suffer if the plaintiff was not forced to pay its costs or subjected to a stay. In this case, not only are there changed factual circumstances justifying the refiling of the case, but Meridian Co. has suffered no harm in

---

[7] Eskofot A/S v. E.I. Du Pont De Nemours, 872 F. Supp. 81.

litigating this case for almost a year in that its attorneys have been litigating the case and obtaining the benefits of discovery to date.

As held in *Sewell v. Wal-Mart Stores, Inc.*, 137 F.R.D. 28, 29 (D. Kan. 1991):

"Upon consideration of the parties' arguments, the court finds that defendant's motion for costs and attendant stay should not be granted. First, the court notes that plaintiff's prior dismissal was without prejudice and that defendant did not seek an award of costs or to impose any other conditions on plaintiff's dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure at the time of the first dismissal. Second, and most importantly, the court finds no evidence of vexatious intent, or that plaintiff was attempting to gain any tactical advantage by dismissing and refiling this suit. See Wahl, 701 F. Supp. at 1533 (denying defendant's motion for costs under Rule 41(d) where the court found no showing of vexatious intent on plaintiffs' part in filing the second suit). "[8]

Because Dr. Chubaty settled during the pendency of the Texas Action, and Meridian in turn hired a new medical spokesperson, Dr. Bissoon, who most clearly lacked minimum contacts with Texas, Erchonia refiled in New York to cut off further wasteful contests of personal jurisdiction.

Erchonia was forced to file an emergency motion for discovery, along with amended versions of the original complaint not only in response to Meridian's misleading statements to the court and the public, but additionally to properly name Meridian Medical as a party to this action.  Accordingly, while it now seems that Meridian Medical would inevitably be named a party to the Texas action, had proper jurisdictional discovery been conducted, it became clear that Meridian would further challenge Bissoon's addition to the Texas Action.  Rather than expend further legal fees to assert personal jurisdiction over Bissoon, and given Meridian's previous misleading statements, pursuing an open and shut jurisdictional case in New York appeared to be more reasonable rather than expending attorney's fees on further jurisdictional fights.  Given the determination as to whether relief should be further pursued in Texas, filing in

---

[8] Meridian Co. will surely argue it could not move for its fees in the Texas Action although under 28 U.S.C. § 1927 such a motion could have been filed, nor does that explain the one year delay in bringing this issue to the Court's attention here.

New York was the least expensive option both for Erchonia and Meridian given the changed circumstances.

### 3. Erchonia Achieved Substantial Results in the Texas Action

The underlying theory in awarding 41(d) costs is to provide the Defendant recourse for grounds in which unnecessary fees were expended. Accordingly, Chubaty's enjoinment as a result of the Texas action is illustrative by and of itself that the fees were not unnecessarily expended. It is unfair to argue that the Texas Action was frivolous even as to Meridian, when substantial relief was obtained, including a consent judgment and discontinuance by Meridian's chief research doctor at the time, Dr. Chubaty. Meridian used Dr. Chubaty in several press releases to legitimize its product, yet in the end, he consented to an injunction. Further and contrary to the numerous uses of Dr. Chubaty's name to tout the Meridian product, some of which remain on their website to this day, Chubaty testified: "I didn't think that [Meridian's lipolaser machine] was holding up to all that it was said to be, and I like to--if I stand behind a product, I felt to see more substantial results, so I actually wasn't that happy with what I was seeing." JDP Decl., Exh. G, p. 24. Meridian still uses Chubaty on its website despite his dissatisfaction with the product and termination of his relationship. See JDP Decl. Exh. I. The Texas Action was not conducted for vexatious purposes but rather achieved a significant result pertaining to the ongoing worldwide infringement of its trademark.

### B.    The New York Action Seeks Further Relief by Adding a Party Unavailable During the Texas Action and Seeks Additional Relief

The defendants cite *Simeone* for the notion that the addition of Lionel Bissoon, an additional party now named in the New York Action, and the causes of action for false advertising are insignificant and do not affect this Court's assessment of the identicality of the

two actions.  Yet again, the defendant fails to note the factual underpinnings in the case on which

it relies, namely the adverse pretrial rulings the plaintiff initially received in State Court, before

deciding to refile in Federal Court, the plaintiff's lack of candor in state court, and most

importantly the availability of the newly named defendant in the first action.  *Simeone v. First

Bank Nat. Ass'n*., 125 F.R.D. 150, 154 (D. Minn. 1989).  It would appear that as in *Zucker v.

Katz*, the two actions should be "nearly identical" which is not the case here.  True, they both

allege a trademark infringement claim against Meridian Co. but the addition of Dr. Bissoon and

the false advertising and promotion claims, are entirely new causes of action not existent in the

Texas Action.  Further, the trademark infringement alleged in the Texas Action against Chubaty

ceased and an injunction was obtained, whereas the infringement alleged in this case relates to

the subsequent activities of Meridian where it restarted infringement after assuring Erchonia,

through its distributor, that it is was going to stop.  Indeed, the central role of Dr. Bissoon in

Meridian's false advertising and trademark infringement was not fully realized until long after

the Texas Action was filed and his new role as medical endorser was just announced in a press

release in the summer of 2007.  *See Zucker v. Katz*, 708 F. Supp. 525, 529.

## C.  Meridian has Unclean Hands and Plaintiff will be Harmed if A Stay is issued Until The Defendant's Unwarranted Attorney's Fees are Paid

Meridian is seeking essentially an equitable remedy in the form of Rule 41(d) which is not

mandatory and is subject to the Court's discretion.  A factor in this case should be Meridian's

unexplained delay in seeking this remedy.  At the management conference, Meridian noted that it

intended to move to dismiss for personal jurisdiction reasons once it had been served in the case.

Yet all of the facts now known that establish personal jurisdiction in New York were well known

to counsel at that conference.  Further, and more to the point, no mention was made by Meridian

to the Court or opposing counsel that it was going to seek fees and costs and a stay of the entire

lawsuit once service had been accomplished on the Korean defendant. Meridian chose to permit the parties to expend all of the fees through the close of discovery after which it brought this motion. No valid explanation is provided for this delay other than possibly the fact of service being accomplished. However, if service is the critical event for this motion which it is not, it clearly is not a basis for not disclosing the intent to make the motion until now—an implicit requirement of the management conference process. Had the parties been aware of this potential motion, the Court could have adjudicated this issue up front and either resources would have been expended in other ways or Defendant would have known its fees were not going to be reimbursed. Either way, it is highly inequitable to seek this relief now.

Further, as previously noted, much of the fees fighting over jurisdiction in Texas could have been avoided had Meridian disclosed the numerous contacts it had in the U.S. and Texas. The knowingly misleading statements made to the Northern District of Texas, the added discovery resulting therefrom, and the legal fees in turn expended in combination with making those arguments, generated the very fees for which Meridian now seeks reimbursement.

Erchonia further alleges that should this case now be stayed in the Southern District of New York until it pays Meridian's attorney's fees, such stay will certainly cause undue hardship. Given the foregoing explanation of the events requiring filing in New York, it is evident that the Erchonia did not refile with vexations intent, but rather due to numerous good reasons. *See Robinson v. Nelson*, 1999 U.S. Dist. LEXIS 2004, 5-6 (D. Mass. Feb. 18, 1999). It was not capricious or arbitrary. Should this course of behavior be allowed to proceed by requiring Erchonia's financing of Meridian's deceptive efforts, plaintiff will suffer undue hardship through having to pay the exorbitant fees charged Meridian (occasioned by their misstatements) in order

to prosecute its legitimate claims.  Doing so only further delays justice in this case.  *Id.*; *See also* Sewell v. *Wal-Mart Stores, Inc.*, 137 F.R.D. 28, 29 (D. Kan. 1991).

A dismissal of an action for lack of personal jurisdiction is not a dismissal on the merits in any event.  Fed. R. Civ. P. 41(b).  Yet, the cases relied on by the defendants involve cases in which substantive action took place.  Had Erchonia's former counsel opted to move forward in Texas, and been dismissed without prejudice for lack of personal jurisdiction, no basis would exist for awarding Rule 41(d) costs here.  It seems anomalous that a defendant that vigorously objects to jurisdiction in a deceptive manner, and who then receives the very result it seeks, a dismissal, would be entitled to attorneys fees simply due to the quirk of Plaintiff dismissing the case without prejudice before the Court potentially does so.

**D.    Meridian Has Not Demonstrated with Evidence Entitlement To A Stay Or Attorney's Fees As Costs**

To the extent that fees or costs are awardable, which Erchonia plainly disputes, Defendants have made no showing of those fees or costs, or their reasonableness.  First, no information was provided in the motion—it is all redacted.  Second, to the extent counsel has summarized its activities and bills, there is no way to assess this presentation given the totally redacted bills.  Further, it is clear that many of the activities of defense counsel on the Texas case in investigating the claims, understanding the facts even with respect to jurisdiction were, and are, pertinent to this case and need not be billed a second time.  Further, the motion to dismiss filed by Meridian Co. in Texas was the most basic of motions taken directly from any of a number of treatises or form books.  A cursory review of the declaration of the principal at Meridian shows that it contains a rote denial of contacts in Texas. No discovery of that individual was taken, and Meridian did not have to address jurisdiction under Rule 4(k)(2)

although such is a common basis when dealing with foreign defendants.  In other words, the factual presentation by Meridian was a misdirection that was never revealed due to its artful presentation of the jurisdictional issue.  Meridian knew then, and has conceded here, that jurisdiction in the U.S. was proper.  The costs associated with that motion are not properly placed on Erchonia.

In the event that this court is able to find any merit in Meridian's motion, Erchonia further urges this court that Meridian's redaction renders such fees unwarranted and nonetheless extremely excessive. *Esquivel v. Arau*, 913 F. Supp. 1382.  Due to the redactions of the amounts and the time entries, Erchonia is unable to respond to what reductions in the $121,324.46 should be made. Quoting the court in *Esquivel*:

> *"There is no way to assess whether any of these expenses were reasonably or necessarily incurred, or whether they will be of continuing usefulness to the defendants in the current action." Id. at 1393*

However, even in *Esquivel*, where plaintiffs forum shopped to harass a defendant, and costs amounted to a total of $41,156.60, inclusive of other attorney's fees that:

> *"[g]iven that the Southern District action never progressed beyond the filing of a motion to dismiss, this amount seems excessive"* [a 50% reduction was necessary because the] *"defendants have presented no evidence that their billing rates are reasonable or consistent with legal services in the [applicable forum.]"*

Meridian too has provided no reason why it employed New York attorneys to defend an action in Dallas.  *Id.*  Further, Meridian asserts without basis that it gained nothing from its efforts in Texas, but has nothing to back that up.  It seems quite clear that having Mr. Castello represent all defendants in this case had the obvious benefit of his familiarity with the case and the basic allegations and investigation into the substantive issues raised in the case.

Finally, the use of attorneys from New York to litigate a case in Dallas with their attendant higher billing rates is not customary and usual billing in the Dallas area.  JDP Decl., ¶

12.  Defendant makes no attempt to justify the amount and reasonableness of its bills, and goes so far as to provide totally redacted bills for which Plaintiff has no opportunity to analyze and respond.  Here, the defendant states that all of the present invoices, which are only for review *in camera*, only relate to work product applicable to Texas.[9]  Yet, by the defendant's own account, extensive settlement negotiations were undertaken, there was investigation of the underlying factual issues of Meridian's infringement, and investigation into jurisdictional issues, all of which certainly were useful in understanding the positions of the parties in this case.   To be clear–the Texas Action involved a single pro forma motion to dismiss, one deposition that began at 10:03 a.m. and finished at 10:50 a.m. and a voluntary dismissal.  Given the total lack of support for Defendants' claim for fees and the manifest unreasonableness of those fees, the motion should be denied on that basis as well.

## IV      CONCLUSION

Fees in this case should not be awarded as Erchonia's dismissal was with good reason, was not vexatious, and its refiling did not constitute "forum shopping."  Further, Meridian's delay in bringing this motion, its funding of the lawsuit to date and utter failure to substantiate its claim for fees apart, from conclusory statements, do not justify a stay or an award of any fees or costs at this time.

Dated:  August 1, 2008

Respectfully submitted,

**MASON & PETRUZZI**

By:   _/s/James D. Petruzzi_

James D. Petruzzi (JP 4944)
MASON & PETRUZZI

---

[9] Defendant's memorandum, page 15.

4900 Woodway Drive Suite 745
Houston, Texas  77056
Telephone: (713) 840-9993
Facsimile: (713) 877-9100

**SCHWEITZER CORNMAN GROSS &
BONDELL LLP**

Michael A Cornman (MC 7134)
Elliot W. Lipins (EL 6151)
292 Madison Avenue
New York, NY  10017
Telephone: (646) 424-0770
Facsimile: (646) 424-0880

Attorneys for Plaintiff Therapy Products, Inc. d/b/a
Erchonia Medical

CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008 I electronically filed the foregoing **PLAINTIFF THERAPY PRODUCTS, INC. d/b/a ERCHONIA'S OPPOSITION TO MOTION FOR COSTS AND STAY OF PROCEEDINGS PURSUANT TO RULE 41(D)** with the clerk of court for the U.S. District Court, Southern District of New York, using the electronic case filing system of the court.  The following attorneys of record for Defendant have consented in writing to accept notice as service of this document by electronic means and are being served by a "Notice of Electronic Filing" sent by the electronic case filing ("ECF") system:

.

Raymond R. Castello
Kristen McCallion
Attorneys for Defendants
Lionel Bissoon, Meridian
Medical Inc. and Meridian
America Medicals, Inc.
153 East 53d Street, 52nd Floor
New York, NY 10022

By: _____