IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **THERAPY PRODUCTS, INC.** § <br> **d/b/a ERCHONIA MEDICAL** § <br> § <br> Plaintiff, § <br> § <br> § <br> v. § <br> § <br> **LIONEL BISSOON, M.D.,** § <br> **d/b/a MESOTHERAPIE & ESTETIK,** § <br> **MERIDIAN AMERICA MEDICALS, INC.** § <br> **MERIDIAN MEDICAL INC, and** § <br> **MERIDIAN CO., LTD.** § <br> § <br> Defendants. § | Civil Action No.: 07 CV 8696 (DLC) |

DECLARATION OF JAMES D. PETRUZZI IN OPPOSITION
TO MOTION FOR AN AWARD OF COSTS AND STAY

I, James D. Petruzzi declare:

1. I am an attorney licensed to practice law in the State of Texas and am admitted before this Court as attorney of record for Plaintiff Therapy Products, Inc., d/b/a Erchonia Medical. I know the following facts of my own personal knowledge, and if called upon, would and could competently testify thereto. I am a 1984 graduate of the University of California at Berkeley Law School and have been litigating matters pertaining to intellectual property, including trademark cases, in the Dallas area since at least 1990.

2. In the late summer to fall of 2007 our firm was approached by Erchonia Medical to represent it in connection with issues pertaining to a product they sold under the trademark Lipolaser and impairment of their rights in connection thereto. We were advised that a lawsuit was pending in Dallas, Texas between Erchonia Medical and a competitor, identified as

Meridian, and that suit had been pending for approximately 6 months, and that settlement discussions were underway but certain discrepancies in the settlement appeared to be causing a breakdown in final resolution.

3. On or about September 12, 2007, we subsequently substituted for counsel David, Goodman & Madole that represented Erchonia in the suit venued in the Northern District of Texas entitled Therapy Products, Inc. v. Chubaty et al., Civ. Act. No. 3-07cv0381-N.

4. After we became engaged we learned that one of the key defendants, Dr. Chubaty, had agreed to a consent judgment by stipulation, a copy of which is attached hereto as Exhibit A, although we did not see the injunction until some time later.  Dr. Chubaty, we were informed, had entered into some agreement earlier with Meridian to conduct research and had been hired to study and promote the efficacy of the Meridian product.  Purportedly he had conducted some study regarding the Defendant's product as used by patients for girth loss.  Attached hereto as Exhibit B is a press release dated January 26, 2006 that we later obtained pertaining to Dr. Chubaty's role with Meridian.

5. At or about the time we became engaged in the lawsuit, we also learned that the parties had engaged in substantial settlement discussions whereby Meridian Co. had initially agreed to stop using the Lipolaser mark.  On August 31, 2007, around the time settlement discussions were being conducted, Erchonia's President, Steven Shanks, emailed the South African distributor for Meridian regarding the trademark and Erchonia's demand that it stop infringement.  In response, the distributor assured Erchonia that it "will only be using the name LAPEX 2000 in promoting, communicating, marketing and selling the device."  Further the distributor states that "this is the directive we have received from our business partners" referring to Meridian.  Attached hereto as Exhibit C is a true and correct copy of these emails to and from Steven Shanks and John

Malherbe of Skin Revision. At or about this time frame, Erchonia believed that the Texas Action had accomplished one of its goals to get Meridian to stop using the Lipolaser trademark due to these representations and that Dr. Chubaty had agreed to discontinue use as well. We were then shown a proposed settlement agreement that was being exchanged between Erchonia's former counsel and Meridian's counsel which included numerous additional terms to which Erchonia could not agree. We also learned that Meridian had restarted its infringement, contrary to Erchonia's understanding during the settlement discussions. At that point, it became clear that the case, which appeared to be headed for settlement, was not going to be resolved.

6.      Erchonia made the decision to dismiss the Texas Action for several reasons. First, a substantial result had been obtained by getting Meridian's U.S. medical endorser, Dr. Chubaty to stop using the Lipolaser name and discontinue use of the product. He also subsequently discontinued his relationship with Meridian. Second, we discovered that Meridian had been in discussions with another Doctor, Dr. Bissoon, and ultimately signed him on as their new medical spokesperson endorser sometime during the summer of 2007. Dr. Bissoon was not located in Texas and could not be served with a complaint in the Texas Action. I later learned from Dr. Bissoon's attorney, Richard Farren, that Dr. Bissoon had been hired by Meridian and was being paid stock in Meridian Co., and a per unit fee for sales, so jurisdiction in New York did not present any significant issues. Indeed, it was not until later in 2007 that it became clear that Dr. Bissoon, a New York doctor, was endorsing the product based on a study that was published in October 2007 that Meridian was using to promote its product in a false and misleading manner. Attached hereto as Exhibit D, Bissoon Deposition Exhibit 22, is a true and correct copy of a study (the "Greenway study") claiming results by use of the Meridian product of 0.4-0.5 cm loss in waist measurement or girth, or approximately 1/6 inch for each treatment.    Attached hereto

as Exhibit E is a true and correct copy of a press release dated December 3, 2007 whereby Meridian claims "with a single treatment, LipoLaser has the ability to reduce waistlines and other areas by one to four centimeters on most skin and body types..." and that "Doctors have reported as much as five inches of loss after a standard four week treatment cycle." The Greenway study had shown in a four week study only 1.74 cm in losses using the Meridian LipoLaser. Dr. Bissoon's new role with Meridian and the dissemination of the Greenway study which purports to be a legitimate clinical study constituted an expansion of the false advertising and improper use of clinical data not extant during the Texas Action.

7. Further, the location of New York being 1500 miles from Dallas where Erchonia was located, made suit in New York less convenient to Plaintiff and more convenient to defendants who were represented by the same attorneys as in the Texas Action and were located in New York. When this suit was initiated, I asked counsel for Meridian, Mr. Castello, to accept service on behalf of Meridian Co. He refused claiming it would be contesting personal jurisdiction in New York. Such a motion was never filed and all defendants conceded jurisdiction was proper in New York.

8. Attached as Exhibit F is a true and correct copy of a press release dated December 4, 2006 that shows Meridian Co. uses the Meridian Medical Canadian company as its contact and that Meridian had attended a trade show in the U.S. in December of 2006 shortly before the Texas Action was filed. This information was not disclosed during the Texas Action.

9. Dr. Chubaty testified that Meridian Medical, the Canadian company, held itself out to be a publicly traded company, even though at the time only Meridian Co., was publicly traded. Dr. Chubaty also was told that that the Meridian that was publicly traded was in Canada, leading Dr.

Chubaty to believe that Meridian Co. was in Canada.  See Exhibit G, hereto, true and correct excerpts from the deposition of Roman Chubaty in the Texas Action, pp. 1, 24, 31-34

10. We learned in this lawsuit that Meridian Co. had visited New York to raise financing for its public offering and had visited its subsidiary Meridian America Medical in Los Angeles several times and attended trade shows in the U.S.  Attached hereto as Exhibit H is a true and correct copy of deposition excerpts from the deposition of Hee Yo Park, President of defendant Meridian America Medicals, Inc., pp. 30-34.   The existence of their U.S. subsidiary in Los Angeles for Meridian Co. was not disclosed by Meridian in the Texas Action and was only discovered by me when conducting pre-suit investigation.

11. The claim for false advertising is an ongoing harm that continues to this day and is based in part on activities and events that have occurred after the suit in Texas was dismissed. Defendants' continued efforts to promote and sell the device despite it not having FDA approval is also a component of the false advertising and promotion and continues to this day.  Indeed, the website of Meridian Co., still lists information and videos from Dr. Chubaty, despite his testimony that "I didn't think that it was holding up to al that it was said to be, and I like to—if I stand behind a product, I felt to see more substantial results, so I actually wasn't that happy with what I was seeing." Exhibit G, p. 24.  Nevertheless, Meridian Co. still has on its website references to and videos featuring Dr. Chubaty promoting the laser, albeit under another name. Attached hereto as Exhibit I is a true and correct copy of a website page from Meridian Co.'s site retrieved July 28, 2008.

12. The fees being sought by Meridian are unreasonable and excessive.  Based on my experience in the Dallas area litigating trademark cases since 1990, fees of over $120,000 being sought by Meridian Co. are excessive and unjustified given the lack of activity in the case.  My

hourly rate in this case has been $325, which is a customary and typical billing rate for a case of this type in the Dallas area. Further, I have been primarily responsible for this litigation in New York without the help of several associates and legal assistants as apparently was the case in the Texas Action on behalf of Meridian. The manner in which Meridian's counsel has billed to the Texas Action is excessive given the form book nature of the motion to dismiss that was filed and the lack of significant activity in that case before it was dismissed. Further, the billing rates applied for early level associates and the use of a New York partner rate is excessive in light of normal and customary billing practices in Dallas. Further, it is impossible for Erchonia to evaluate the basis of Meridian's fee request without access to the billing entries which we have not been provided.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of July, 2008 at Houston, Texas

_____
James D. Petruzzi

CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008 I electronically filed the foregoing **DECLARATION OF JAMES D. PETRUZZI IN OPPOSITION TO MOTION FOR AN AWARD OF COSTS AND STAY** and exhibits thereto with the clerk of court for the U.S. District Court, Southern District of New York, using the electronic case filing system of the court. The following attorneys of record for Defendant have consented in writing to accept notice as service of this document by electronic means and are being served by a "Notice of Electronic Filing" sent by the electronic case filing ("ECF") system:

Raymond R. Castello
Kristen McCallion
Attorneys for Defendants
Lionel Bissoon, Meridian
Medical Inc. and Meridian
America Medicals, Inc.
153 East 53d Street, 52nd Floor
New York, NY 10022

By: _____