UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THERAPY PRODUCTS, INC.
d/b/a ERCHONIA MEDICAL,

      Plaintiff,

v.

LIONEL BISSOON, M.D.
d/b/a MESOTHERAPIE & ESTETIK,
MERIDIAN AMERICA MEDICALS, INC.
MERIDIAN MEDICAL INC., and
MERIDIAN CO., LTD.,

      Defendants.

07 Civ. 8696 (DLC)

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR COSTS AND A STAY OF PROCEEDINGS PURSUANT TO RULE 41(d)

Raymond R. Castello (RC 2106)
Kristen McCallion (KM 5593)
FISH & RICHARDSON P.C.
153 East 53rd Street, 52nd Floor
New York, New York 10022
Tel: (212) 765-5070
Fax: (212) 258-2291

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 1

    A. Plaintiff Commenced the Texas Action Improperly and Without Due Diligence and Refiling in New York Was For Obvious Strategic Advantage ........................ 1

    B. It Is Irrelevant That Plaintiff Added a Party and a Claim to the New York Action ............................................................................................................ 6

    C. Meridian Co. Did Not Deceive the Court Nor Did It Delay in Filing This Motion ............................................................................................................ 7

    D. Meridian Has Established That It Is Entitled to An Award of Costs and Attorneys' Fees Incurred By the Texas Action and That Defendants Are Entitled to a Stay Until Such Costs Have Been Paid ........................................ 8

III. CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Activox, Inc. v. Envirotech Corp.*,
  532 F. Supp. 248 (S.D.N.Y. 1981) ..................................................................................8, 9

*Cablevision Systems New York City Corp. v. Diaz*
  2002 WL 31045855 (S.D.N.Y., July 10, 2002) .....................................................................9

*Loubier v. Modern Acoustics, Inc.*,
  178 F.R.D. 17 (D. Conn. 1998)..................................................................................5, 6, 8

*Rogers v. Wal-Mart Stores, Inc.*,
  230 F.3d 868 (6th Cir. 2000) ..........................................................................................8

*Tucker v. Mukasey*,
  2008 WL 2544504 (S.D.N.Y., June 20, 2008) ....................................................................9

*Wishneski v. Old Republic Ins. Co.*,
  2006 WL 4764424 (M.D. Fla., Oct. 10, 2006) ...................................................................8

*Young v. Dole*,
  1991 WL 158977 (E.D.N.Y.1991)....................................................................................7


**STATUTES**

Fed. R. Civ. P. 4(h)(2)..........................................................................................................2

Fed. R. Civ. P. 4(k)(2)......................................................................................................2, 4

Fed. R. Civ. P. 41(d) ................................................................................................... passim

I.  **INTRODUCTION**

In Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Costs and Stay of Proceedings Pursuant to Fed. Rule Civ. P. 41(d) ("Rule 41(d)")[1], Plaintiff asserts that its alleged good faith and relief in the Texas Action (solely against Dr. Chubaty), and the addition of Dr. Bissoon and a false advertising claim in the New York Action, shelter it from the impositions of Rule 41(d). Knowing that such factors, true or not, are not outcome determinative of this motion, Plaintiff also attempts to rest its opposition on various, albeit false and conclusory, allegations regarding Meridian Co. Generally speaking, Plaintiff's Memo contains a plethora of shockingly unsubstantiated assertions of unclean hands by Meridian Medical Inc. ("Meridian Medical"), Meridian Co. Ltd. ("Meridian Co."), and their counsel, so that now, Defendants have been placed in the unfortunate position of having to point out many of Plaintiff's misrepresentations. Further, and as explained below, Plaintiff's Texas Action was not based on good faith, for Plaintiff knew it had no basis to commence the action in Texas, and withdrew the Texas Action only after it had exhausted its attempts to keep it alive by multiple amended pleadings and wasteful motion practice. Plaintiff now fabricates a rationale as to why the Texas Action was proper. For these reasons, combined with a plain reading of Rule 41(d) and the relevant case law, Defendants should be awarded a stay of the current proceedings until Plaintiff reimburses Meridian Co. for its costs and fees incurred in connection with the Texas Action.

II.  **ARGUMENT**

   A.  **Plaintiff Commenced the Texas Action Improperly and Without Due Diligence and Refiling in New York Was For Obvious Strategic Advantage**

Simply stated, the Texas Action was commenced by Plaintiff without due diligence, proper investigation, or a valid basis for jurisdiction.

---

[1] Referred to herein as "Plaintiff's Memo" or "Pl. Opp. Mem.".

1

To be clear, Plaintiff *never* relied on Fed. Rule Civ. P. 4(k)(2) to assert jurisdiction over Meridian Co., and there is absolutely no reason to suggest that Meridian Co. acted with unclean hands because it failed to 'guess' Plaintiff's alleged reliance upon such Rule. It is absurd for Plaintiff to now claim it had been relying on Rule 4(k)(2) all along,[2] as the first time Rule 4(k)(2) has ever been raised, over the course of *the last year and half* since the Texas Action was filed, was in Plaintiff's Memo. It has always been abundantly clear that Plaintiff claimed jurisdiction over Meridian Co. due to Meridian Co.'s alleged contacts and conduct in Texas. To illustrate, in the Texas Action, Plaintiff alleged that Meridian Co. was a "corporation doing business in this district and division [i.e., Texas]". Declaration of Raymond Castello dated July 14, 2008 (the "Castello Decl."), Exs. A, B, I. As Plaintiff currently acknowledges, "Erchonia initially filed this suit in the Northern District of Texas based upon Meridian's and their medical researcher Dr. Chubaty's contacts with the State of Texas..." and "[t]he infringing use of the trademark in Texas provided a jurisdictional basis against Meridian..." Pl. Opp. Mem. p. 2 (emphasis added).

Meridian Co.'s motion to dismiss the Texas Action was a pleading *responsive* to Plaintiff's First Amended Texas Complaint.[3] The motion was based on Erchonia's failure to serve Meridian Co. in accordance with Fed. R. Civ. P. 4(h)(2) (attempted via hand delivery to the Meridian Medical offices in Vancouver). Indeed, Plaintiff admits that "former counsel may have clumsily pursued service." Pl. Opp. Mem. p. 5. The motion was also based on Erchonia's failure

---

[2] Plaintiff forecasted that Meridian Co. would argue it "was Erchonia's burden to establish jurisdiction under Rule 4(k)(2)" (Pl. Opp. Mem. p. 3, fn. 5); however, that prediction was wrong, as Meridian Co. recognizes that Plaintiff would have had to first rely on Rule 4(k)(2) prior to establishing jurisdiction over Meridian Co. under Rule 4(k)(2). In any event, "[s]erving a summons" prompts the applicability of Rule 4(k)(2) and Plaintiff *failed to properly serve* Meridian Co. in the Texas Action. Rule 4(k)(2) was never applicable.

[3] Plaintiff repeatedly categorizes Meridian Co.'s motion to dismiss as "form book" in an attempt to portray that the fees incurred with such a "form book" motion (presumably no matter what they amounted to) were too high. We do not understand how a ten page motion that specifically discussed the actions of Plaintiff and Meridian Co., and provided an in-depth analysis into the law of personal jurisdiction, specifically in Texas, is "form book". In any event, it appears clear that Meridian Co.'s motion to dismiss was anything but "form book", indeed, later in its Memo, Plaintiff describes the motion as an "artful presentation". Pl. Opp. Mem. p. 16.

to allege personal jurisdiction over Meridian Co. As stated by Meridian Co., it "has had no contacts with Texas," and "has not knowingly had any contact with any person or entity in Texas in connection with any of the allegations Plaintiff makes in its Complaint or otherwise." Castello Decl., Ex. C. The statements set forth by Meridian Co. in its motion to dismiss were accurate, and Plaintiff's claims to the contrary are wholly without merit.[4]

Rather than respond to Meridian Co.'s motion to dismiss, as one would expect if there was a basis for jurisdiction, Plaintiff moved for jurisdictional discovery in the form of depositions. Castello Decl., Exs. D, E. Why Plaintiff chose not to respond to the motion to dismiss was made clear by a Declaration attached to Plaintiff's motion for leave to take depositions, which revealed that Plaintiff *knew* it did not have jurisdiction over Meridian Co. in Texas when it commenced the Texas Action. As the Declaration states, in "*March* of 2007"[5] Plaintiff had an Erchonia employee telephone Meridian Medical (when it knew Meridian Medical was represented by counsel[6]), lie about her identity and purpose of the call, and request that materials regarding the lipolaser, be sent to her in Texas. Declaration of Raymond R. Castello dated August 8, 2008 ("Castello Decl. Reply"), Ex. A. This correspondence was an improper attempt to create jurisdiction when none existed.

When Plaintiff's request for discovery was granted, Plaintiff was afforded the opportunity to depose up to *four (4)* individuals employed by Meridian Co. and Meridian Medical, including Dr. Chubaty, with respect to matters related to *jurisdiction*. Castello Decl., Ex. H. Despite this opportunity, Plaintiff failed to schedule the depositions it had been granted within its allotted

---

[4] That Plaintiff alleges Meridian Co. made "knowingly misleading statements" to the Northern District of Texas, and objected to jurisdiction in a "deceptive manner" is incredulous. (Pl. Opp. Memo. 14, 15.) Meridian Co.'s motion papers in the Texas Action provided accurate representations of Meridian Co.'s conduct in, and contact with, Texas.
[5] The First Texas Complaint was filed on *February* 28, 2008.
[6] By this time, Plaintiff's counsel had received three letters from Meridian Medical's counsel, Fasken Martineau DuMoulin LLP, and so it was aware that Meridian Medical was represented by counsel. Castello Decl. Reply ¶2.

3

time period and then had to request an extension of its deadline (to which Meridian Co. agreed). Castello Decl. ¶ 12. Ultimately, Plaintiff conducted one deposition of Dr. Chubaty,[7] and forewent the opportunity to depose *anyone* from Meridian Medical or Meridian Co. Castello Decl. ¶ 16. In this regard, Plaintiff's comments that Meridian Co. "thwarted discovery," "hid the truth," "obstructed discovery" and acted with "obstinacy" are nothing but misrepresentations of what actually occurred. Indeed, there were no discovery requests to "thwart" as Plaintiff failed to conduct the discovery it had been granted.[8]

That Plaintiff now provides a reason as to why jurisdiction in Texas was proper is pure fabrication. In fact, Plaintiff's current reliance on Rule 4(k)(2), and its position that, with respect to Meridian Co., "there was no single district in the U.S. at that time that had the kind of systematic contacts required for personal jurisdiction," *is an admission that Meridian Co. did not have the requisite contacts in Texas that would subject it to jurisdiction in Texas, as Plaintiff had argued at the time.* Pl. Opp. Mem. p. 3.

Further, Plaintiff's inexplicable lack of knowledge regarding the status of its trademark application is a prime example of its carelessness in filing the Texas Action.[9] The multiple amendments of Plaintiff's Texas complaints were the sole result of Plaintiff's failure to conduct

---

[7] Plaintiff argues that a "significant result" was achieved by the Texas Action due to Dr. Chubaty's acquiescence to stop using the term "lipolaser" and thus "fees were not unnecessarily expended." Pl. Opp. Mem. pp. 5, 12. This motion is about Meridian Co.'s fees, not Plaintiff's. Further, the outcome with Dr. Chubaty had no effect on Plaintiff's claims against Meridian Co. or on Plaintiff's rights to the claimed trademark lipolaser, which is exactly why Meridian Co. was sued *again* by Plaintiff for the same claim in New York.

[8] Plaintiff also states that Meridian Co. withheld the fact that it had created a U.S. subsidiary in Los Angeles, Pl. Opp. Mem. p. 3. A quick review of the Meridian Medical website would have informed Plaintiff's prior counsel that "[t]he company [Meridian Co.] has… established subsidiaries in China, Los Angeles, and Vancouver, BC" (emphasis added). This webpage, with this statement, was published years prior to, and at the time of, the commencement of the Texas Action. Castello Decl. Reply, Ex. B.

[9] Plaintiff's assertions about the prosecution of its trademark application are *still* incorrect. Plaintiff asserts that "Erchonia had obtained a notice of allowance of its trademark registration which would have issued in due course but for an opposition proceeding filed two months after suit by Meridian Co." Pl. Opp. Mem. p. 2, n.2. However, Plaintiff never received a Notice of Allowance from the Patent & Trademark Office, rather, it received a notice that its application was to be published for opposition purposes. *See*, http://www.uspto.gov.

4

due diligence prior to filing suit, and Meridian Co. was forced to incur fees as a result of all of them.

Moreover, Plaintiff's assertion that Meridian had been negotiating with New York based Dr. Bissoon, *unbeknownst* to former counsel, and thus "misleading" Plaintiff during settlement discussions is false. Pl. Opp. Mem. pp. 4, 5. To the contrary, Meridian Co. had been publicly announcing, via its website and the Reuters news agency, its continued promotion and distribution of the lipolaser, as well as its arrangement with Dr. Bissoon during the months settlement was discussed—all of this information was made public as it occurred and readily available to Plaintiff. *See*, Castello Decl. Reply, Ex. C. Plaintiff acknowledges this, as it states it "realized" Dr. Bissoon's involvement when it was "announced in a press release in the summer of 2007." Pl. Opp. Mem. p. 13. After such time, Plaintiff's current counsel was informed, "[i]n late summer to fall of 2007" that "settlement discussions were underway." Petruzzi Decl., ¶ 2. Plaintiff was perfectly aware of what was going on while the parties discussed possible settlement.

Undoubtedly, dismissing an action that Plaintiff knew should never been brought, does not provide Plaintiff with "good cause" for dismissal. Plaintiff's most interesting claim in this regard is that it voluntarily dismissed the Texas Action "in the interest of judicial economy . . . ." Pl. Opp. Mem. p. 5. If interests of judicial economy were important, Plaintiff never would have commenced the Texas Action. Plaintiff's argument mirrors the unsuccessful argument made in *Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17 (D. Conn. 1998), in which plaintiffs admitted they made an inadvertent mistake in filing a prior action, and thought they should be "applauded" for voluntarily dismissing that action, as they were promoting the interests of

5

judicial economy. *Loubier*, 178 F.R.D. at 22. Rejecting plaintiffs' argument, the Court held that plaintiffs' mistake was not a sufficiently "good reason" to prevent an award of costs.[10] *Id.*

While Plaintiff claims "no tactical advantage" (Pl. Opp. Mem. p. 5) was gained by filing the New York Action, this is undeniably incorrect. Knowing it filed a lawsuit with no basis, and realizing it had run out of opportunities to amend its complaint (it had already filed three, and undoubtedly wished it could file a fourth to add the false advertising claim alleged in the New York Action a mere eleven days after withdrawing the Texas Action), Plaintiff chose to withdraw the Texas Action and file a new action in New York with a clean slate and an additional desired claim.[11]

### B.  It Is Irrelevant That Plaintiff Added a Party and a Claim to the New York Action

"Undoubtedly, the two complaints bear some similarity." Pl. Opp. Mem. p. 6. That the New York Action "pursues an entirely new infringement through Dr. Bissoon..." (Pl. Opp. Mem. p. 6) fails to provide Plaintiff with "good cause" and fails to render Rule 41(d) costs inappropriate. If Plaintiff continued to litigate the Texas Action and was successful in doing so, Plaintiff would have obtained a remedy against Dr. Bissoon (i.e., if Meridian Co. was ordered to cease use of the term "lipolaser" then its agreement with Dr. Bissoon could no longer be enforced.) Plaintiff did not have to refile its lawsuit in New York to stop Bissoon's alleged

---

[10] Interestingly, Plaintiff claims that "[s]ervice in Canada" of Meridian Co. was based on "the mistaken belief that ...Anna Brazier was an officer of the publicly traded company as she had indicated to Dr. Chubaty." Pl. Opp. Mem. p. 10. Chubaty's deposition testimony, which is cited for support, occurred *after* Plaintiff's attempted service in Canada, and so it could not have provided any basis for service; further, Chubaty repeatedly testified that he "wasn't really paying much attention to her [Brazier] when [he] had discussions." Petruzzi Decl., Ex J (32:23-24, 33:6-7).

[11] That Plaintiff abandoned the "more convenient forum" (Pl. Opp. Mem. p. 5, 6), is irrelevant to its good cause argument, because Plaintiff did not have a cause of action in Texas.

6

infringement. Hence, it was *not* alleged new facts that gave Plaintiff reason to withdraw but rather the realization that it could no longer play the jurisdictional charade in Texas.[12]

### C.    Meridian Co. Did Not Deceive the Court Nor Did It Delay in Filing This Motion

Plaintiff also complains that "not a word was mentioned to opposing counsel or the Court at the initial management scheduling conference" about Meridian Co.'s alleged "intent to make [this] motion." Pl. Opp. Mem. p. 1, 13, 14. Well there is good reason for that—back in March, when the Initial Pretrial Conference was held, counsel for Defendants could not predict whether Meridian Co. would ever be served with the New York Complaint, questioned whether jurisdiction in New York over Meridian Co. was proper, and had not fully researched whether a Rule 41(d) motion was feasible. Indeed, such decisions were made after Meridian Co. was served with the New York Complaint. That Plaintiff intimates such conduct was inequitable is wholly without reason. Similarly, Plaintiff alleges that Meridian Co. and the undersigned counsel deceived this Court during the mediation held on July 1, 2008[13] and negatively equates Meridian Co.'s "waiting" to file its Answer until after the mediation to "blatant gamesmanship and tactical motion practice." Pl. Opp. Mem. p. 6. To be clear, Meridian Co. filed its Answer on the day it was due and filed this motion a mere five days later. Following the Rules of Civil Procedure does not amount to gamesmanship.

While there is no support for the proposition that a motion filed pursuant to Rule 41(d) must be filed within a specific time frame, Plaintiff argues that Meridian Co. delayed in making

---

[12] Further Plaintiff's reliance on *Young v. Dole*, 1991 WL 158977 (E.D.N.Y.,1991) is misplaced. Per *Young*, "a claim will be considered distinct from a prior claim so long as it is based upon events which occurred subsequent to the <u>termination of the first action</u>" (*id.* at *3) and not, as Plaintiff claims "after the <u>filing of the first complaint</u>." Pl. Opp. Mem. p. 10. Plaintiff admits it knew of facts surrounding Bissoon's involvement in the case "in the summer of 2007," well prior to the filing of its Notice of Dismissal on September 28, 2007. Pl. Opp. Mem. p. 13.
[13] This is Plaintiff's second attempt in making this allegation. The parties' letters to Magistrate Judge Katz, and Judge Katz's Order denying to conclude that the mediation was conducted in bad faith by Defendants are annexed to the Castello Decl. Reply, Ex. D.

this motion and such delay is inexcusable. Pl. Opp. Mem. pp. 13-15. Meridian Co. had good faith, strategic reasons for filing this motion when it did, the substance of which are protected by attorney-client privilege. Meridian Co. timely filed this motion as soon as it believed it was officially served with the New York Complaint, and thus officially a party to the New York Action.

### D. Meridian Has Established That It Is Entitled to An Award of Costs and Attorneys' Fees Incurred By the Texas Action and That Defendants Are Entitled to a Stay Until Such Costs Have Been Paid

Plaintiff repeatedly insists that bad faith, vexatious intent, and a "high degree of improper litigation activity" are required for an award of fees and costs. Pl. Opp. Mem. p. 9. However, while bad faith is a factor the Court may choose to consider under its analysis of Rule 41(d), it is not dispositive of whether such an award is proper. Simply stated, "[a]n award of Rule 41(d) costs is not limited to cases of forum shopping and vexatious litigation nor does it require an act of bad faith." *Wishneski v. Old Republic Ins. Co.*, 2006 WL 4764424 *2 (M.D. Fla. Oct. 10, 2006); *see also, Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000) (a "claim of pure motive does not win the day because nothing in the language of Rule 41(d)... suggests that a defendant must show 'bad faith' before a district court can order payment of costs incurred in a voluntarily dismissed previous action" (internal citations omitted); *Loubier* at *22 ("There is no requirement that a defendant must show bad faith on the part of the plaintiff in order to recover costs of a previously dismissed action.). Though much of Plaintiff's argument is irrelevant, because Plaintiff commenced and conducted the Texas Action in bad faith, case law of this Circuit also invalidates Plaintiff's position.

8

For example, in *Activox, Inc. v. Envirotech Corp.*, 532 F. Supp. 248, 251 (S.D.N.Y. 1981)(Pl. Opp. Mem. p. 9), a Plaintiff voluntarily dismissed a prior action when a defendant contested personal jurisdiction. The Court held the following:

> There remains then the question of the voluntary dismissal by Activox of its 1979 action in this district which sought the same relief as is requested by the instant complaint.... <u>Whatever the strategy of Activox may have been in dismissing its prior action,</u> by virtue of Fed. R. Civ. P. 41(d) it is now subject to "the payment of costs of the action previously dismissed.

*Id.* at 251 (emphasis added).

Further, Meridian Co. has made a showing of its fees and costs to the Court. The invoices already provided to the Court and Plaintiff (Castello Decl., Ex. Q) contained attorney names, hours worked, hourly rate, and total amounts billed for that month; they did not provide redactions of billed amounts as Plaintiff erroneously states (Pl. Opp. Mem. p: 16). Further, it is for the Court—not Plaintiff—to decide the reasonableness and necessity of Meridian Co.'s costs and fees incurred with the Texas Action.[14] For this reason, Meridian Co. requested the Court to conduct an *in camera* review of unredacted versions of Meridian Co.'s invoices[15] and has provided such unredacted invoices to the Court with the courtesy copies of this Memo. ("In the Second Circuit, a party seeking attorney fees "must support that request with contemporaneous time records, that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Tucker*, Slip Copy, 2008 WL 2544504, *quoting Cablevision Systems New York City Corp. v. Diaz*, 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002).). Accordingly, Meridian Co.

---

[14] *See, Tucker v. Mukasey*, Slip Copy, 2008 WL 2544504 (S.D.N.Y., June 20, 2008). Pursuant to the precedent established in this District, the Court should, in determining the reasonableness of fees, consider factors including, but not limited to: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirablity" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* at *1.
[15] Defendants' Memorandum of Law in Support, p. 15.

has met its burden in this regard. As the Court will see, Plaintiff's statement: "To be clear – the Texas Action involved a single pro forma motion to dismiss, one deposition… and a voluntary dismissal" (Pl. Opp. Mem. p. 17) is a gross understatement of what Plaintiff put Meridian Co. through in the Texas Action, which, during the course of *seven months*, generated nearly 550 pages of motion practice, appendices and correspondence, approximately 300 pages of which comprise Plaintiff's motion papers alone. Castello Decl. Reply, ¶¶ 6, 9, 10; *see also*, Castello Decl. Exs. A – O (a sampling of these pages).

Further, Plaintiff is incorrect in its assumption that only "New York attorneys" defended the Texas Action. Associate Kelly Vickers, who worked a total of 61.3 hours, associate Lauren Koletar, who worked a total of 167.7 hours, both "Texas attorneys", and litigation paralegal Amalia Macias, who worked a total of 6.7 hours, all in connection with the Texas Action, all work out of the undersigned's Dallas office. In fact, out of 324.7 hours billed to Meridian Co. in connection with the Texas Action, 235.7 of those hours, over 72% of the total hours billed, were billed by Dallas personnel. Castello Decl. Reply, ¶ 7.

Lastly, Plaintiff claims that Defendants' motion is a "cynical attempt to delay resolution" of this case (Pl. Opp. Mem. p. 1). If the Court orders a stay, the only delay would be as a result of Plaintiff's failure to reimburse Meridian Co. in a timely manner. Meridian Co. would prefer the immediate reimbursement of its fees and costs, and if Plaintiff acts accordingly, then there will be no delay at all.

### III. CONCLUSION

Based on Plaintiff's bad faith in Texas and a plain reading of both Rule 41(d) and the relevant case law, Defendants should be awarded a stay of the current proceedings until Plaintiff reimburses Meridian Co. for its costs and fees incurred in connection with the Texas Action.

                                            Respectfully submitted,

                                            FISH & RICHARDSON P.C.

Dated: August 8, 2008                  By: _____
                                            Raymond R. Castello (RC 2106)
                                            Kristen McCallion (KM 5593)
                                            FISH & RICHARDSON P.C.
                                            153 East 53rd Street, 52nd Floor
                                            New York, New York 10022
                                            Tel: (212) 765-5070
                                            Fax: (212) 258-2291

                                            Attorneys for Defendants

30441463.doc