UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                  :

THERAPY PRODUCTS, INC. d/b/a ERCHONIA   :
MEDICAL,
                      Plaintiff,   :   07 Civ. 8696 (DLC)
                                  :

           -v-   :   OPINION & ORDER
                                  :

LIONEL BISSOON, M.D., d/b/a   :
MESOTHERAPIE & ESTETIK, MERIDIAN   :
AMERICA MEDICALS, INC., MERIDIAN   :
MEDICAL INC., and MERIDIAN CO., LTD.,   :
                                  :
                    Defendants.   :
----------------------------------------X

Appearances:

For Plaintiff:
James Daniel Petruzzi
Mason & Petruzzi
4900 Woodway, Suite 745
Houston, TX 77056

Michael A. Cornman
Elliot Wesley Lipins
Schweitzer Cornman Gross & Bondell LLP
292 Madison Ave, 19th Floor
New York, NY 10017

For Defendants:
Kristen McCallion
Raymond Castello
Fish & Richardson P.C.
153 E. 53rd St., 52nd Floor
New York, NY 10022


DENISE COTE, District Judge:

     Plaintiff Therapy Products, Inc. d/b/a Erchonia Medical

("Erchonia") and defendants Lionel Bissoon, M.D., d/b/a

Mesotherapie & Estetik, Meridian Co., Ltd., Meridian Medical

Inc. and Meridian America Medicals, Inc. (collectively, "Meridian") manufacture and market laser devices for medical use.  Erchonia and Meridian have used the term "lipolaser" in connection with their respective low-level lasers designed for liposuction procedures.  Erchonia has sued Meridian for trademark infringement and false advertising, and Meridian has moved for summary judgment.  For the reasons stated below, Meridian's motion is granted.

BACKGROUND

The undisputed facts of record, or, where disputed, taken in the light most favorable to Erchonia, establish the following.  In 2001, Erchonia developed its lipolaser,[1] a medical laser that applies low-level light to the skin's surface as part of a process to remove cellular fat content.  The lipolaser is used before liposuction to liquefy the fat.[2]  According to Erchonia's expert, Dr. William B. Locander, the term "lipolaser" suggests a "fat laser machine," and is an approximate literal translation of "fat laser."

---

[1] When this Opinion refers to the parties' lipolasers, it uses the term not in a trademark sense, but to describe certain products.

[2] The lipolaser is also used for lipoplasty.  Liposuction and lipoplasty refer to essentially the same procedures and are used interchangeably in this Opinion.

Erchonia's Use of the Mark "Lipolaser"

Erchonia has introduced little physical evidence to show how it has used the term "lipolaser" with its product.  Evidence depicting the product itself, promotional materials, sales figures, and sales documents show sporadic use of the term.  Instead, Erchonia relies principally on assertions by Erchonia President Steven Shanks ("Shanks") that Erchonia has consistently used the term "lipolaser" in a trademark sense since its coinage in 2001.

Erchonia's lipolaser consists of two main components: a handset, which the physician uses to operate the instrument, and a probe, which emits a laser.  The top of the handset is a circle with a rectangular LCD digital display screen in the middle; the bottom of the handset is a stylized rectangular touch key pad, resembling the shape of the body of a guitar.  Erchonia has submitted three undated exhibits with photographs of the product bearing some version of the term "lipolaser."

One exhibit is a photograph of an overlay decal designed to be used on Erchonia's lipolaser handset.  On the overlay for the circular part of the handset, above the space for the LCD display screen is the word "ERCHONIA" and Erchonia's logo: a massive, block-letter "E" placed against a colored circle ("E Logo").  Below the space for the LCD display screen is the

phrase "NEIRA 4L."[3]  The top of the key pad overlay reads "ERCHONIA ACTIVATED LIPO LASER," and the bottom reads "WORLD LEADER IN LOW LEVEL LASER TECHNOLOGY."  The overlay for the back of the product displays a large E Logo and reads "WORLD LEADER IN LOW LEVEL LASER TECHNOLOGY."  The accompanying declaration asserts that this overlay was used on an Erchonia lipolaser in 2003, that is, two years before Erchonia's application to trademark the mark "NEIRA 4-L."

Erchonia's second exhibit is a photograph of a lipolaser. Like the overlay, this lipolaser displays Erchonia's name and the E Logo above the display screen.  The display screen reads "NEIRA 4L LASER BY ERCHONIA."  Below the display screen is a stylized "EML," which stands for Erchonia Medical Laser, with a sunburst graphic over the L.  The top of the keypad displays "LipoLASER," followed by what appears to be a "TM" and "process and machine patented."  The photograph shows no evidence of the date of this lipolaser, and the accompanying declaration makes no assertions about when this machine was made, sold, or photographed.

Erchonia's third exhibit is a photograph of the LCD screen of a lipolaser.  The LCD screen reads "NEIRA 4L LIPO LASER."

---

[3] As described below, Dr. Rodrigo Neira is a physician who did research funded by Erchonia into the efficacy of the lipolaser. Erchonia applied in 2005 to register NEIRA 4-L as a trademark for its lipolaser.

The display appears to be connected to open circuitry that is not enclosed in any sort of case bearing logos or words.  Again, the photograph shows no evidence of the date this was taken, and the accompanying declaration makes no assertions about when this machine was made, sold, or photographed.

Erchonia's promotional materials show sporadic use of the term "lipolaser."  A number of Erchonia's advertisements have omitted the term altogether, marketing the product instead under various permutations of, inter alia, "Erchonia Laser," "EML Laser," and "Neira 4L."  Likewise, a list of Erchonia's lasers that appeared in a 2004 or 2005 promotional DVD refers to the lipolaser device as the "Neira 4L," and does not include the term "lipolaser."  Erchonia's Vice-President of Marketing, Charlie Shanks, admits that between 2003 and 2006 he chose not to include the term "lipolaser" in several promotional materials for the lipolaser.  For instance, he decided to omit the term "lipolaser" from at least one poster used to promote the lipolaser at tradeshows in 2005; on another undated poster bearing the term "3LT" and the same sunburst graphic depicted on the lipolaser described above, Erchonia advertised its lipolaser as follows: "LipoLASER$^{TM}$: World's First Low Level Lipo Laser Cleared by the FDA."  A 2007 or 2008 promotional pamphlet entitled "Erchonia Medical Research Updates" advertises Erchonia's lipolaser as the "Erchonia Laser," and offers a "free

DVD or . . . in clinic demo of the Laser Assisted Lipo;" the pamphlet does not use the term "lipolaser."

Erchonia's advertisements that do include the term "lipolaser" use it inconsistently.  One exhibit is an undated split-page advertisement.  In the center of the page is Erchonia's name, the E Logo followed by an ®, and the phrase "World Leader in Low Level Laser Technology."  The upper right-hand quadrant of the page includes text that advertises the "Erchonia **derma**LASER$^{TM}$," and the upper left-hand quadrant shows the word "**derma**LASER$^{TM}$" standing alone.  The bottom half of the page mirrors the top-half, with the left-hand quadrant including text that advertises the "**Neira 4L**," and the right quadrant showing the words "Neira**4L**$^{TM}$ lipoLASER" standing alone, with no "TM" after "lipoLASER."  Another advertisement displays across the top of the page "LASERSculpting$^{TM}$," with "Sculpting" in cursive font; the middle of the page displays "Neira 4L$^{TM}$ LipoLASER$^{TM}$; and the bottom of the page includes text, photographs demonstrating the effect the lipolaser has on fat cells, a photograph of the lipolaser, Erchonia's name and the E Logo, and the phrase "World Leader in Low Level Laser Technology$^{TM}$."

A document that appears to be a 2005 promotional press release announcing that Erchonia received "2nd FDA 510(k) Market Clearance for Low Level Lasers" displays the phrase "Lipo**LASER**$^{TM}$

Medical Laser" in a banner at the top of the cover page and atop alternating pages of the report.  The cover page also displays the title "Low-Level Laser-Assisted Liposuction: the Neira 4L Technique" and Erchonia's name and the E Logo.  The text of the press release refers to "low-level lasers" and "the Neira 4L Technique," but does not use the term "lipolaser."

Erchonia's sales manuals and other sales materials show no more consistent use of the term "lipolaser."  The 2005 and 2006 Operation and Maintenance Manuals for the lipolaser repeatedly refer to the product as "The Erchonia EML Laser," "EML Laser," and "The Erchonia Laser."[4]  Of the fifty-eight sales receipts and invoices Erchonia issued for this product in 2004, only three used the term "lipolaser."  Otherwise, no sales documents between 2001 and 2008 make use of the term; instead, they refer to the product principally as an EML or ML laser, which is Erchonia's internal designation for its lipolaser.

Erchonia has offered no business records to show its advertising expenditures on or sales of an item bearing the term "lipolaser" on either its packaging or the instrument itself. The only documentary evidence of Erchonia's advertising expenditures for a lipolaser is an undated spreadsheet that

---

[4] Erchonia submits an operation and maintenance manual for its ML Scanner that displays "LipoLASER" on its cover.  This manual was last revised in July 2007, and was copyrighted in 2008, after the complaint was filed in this case.

includes seven line-item entries under the title "Marketing"[5] and
one entry entitled "Advertising," which add up to $1.19 million.
A multi-page spreadsheet listing the trade shows and
demonstrations Erchonia attended during an unspecified time
period does not use the term "lipolaser" anywhere, includes only
a handful of entries with the term "lipo" in them, and does not
list the amount of money spent to attend each trade show or
demonstration.  Erchonia's only documentary evidence showing
revenue it made from the lipolaser is a spreadsheet entitled
"LipoLaser Sales," which shows the total dollar amount earned on
its EML and EML2 model lipolasers each year from 2001 through
June 2008.  One entry on this spreadsheet reports that Erchonia
sold just over 300 lipolaser units in this time period, which
accounted for $3.65 million in revenue.[6]

As already noted, Erchonia relies principally on Shanks's
assertions to prove that it has continuously used the term
"lipolaser" as a trademark since 2001.  While Shanks asserted in
a declaration that "Erchonia has continuously used the mark
LIPOLASER on its product and in its marketing materials since
2001 to date and the mark LIPOLASER has been associated with the
low level laser product sold by Erchonia since 2001," at his

---

[5] The entries are "Contract- Ottawa," "Contract- Ryan Maloney,"
"Steve," "Salaries," "Expenses," "Demos," and "Tradeshows."

[6] Erchonia asserts that it has made an additional $1 million in
sales of its lipolaser since June 2008.

deposition he admitted that the term was not used "on" every device since 2001, and that Erchonia used the term "on [and] off" and "randomly."  Erchonia has also admitted that the term "lipolaser" was "not physically present on the device itself in 2002."  Shanks claims Erchonia placed the term on the keypad on the face of some of its lipolasers in 2003 and 2004.[7]  But he has also admitted that Erchonia did not affix the term "lipolaser" to the outside of all machines in 2004 and 2005, and put the term on the lipolaser in 2006 after "people started using our term."

Shanks asserts that the start-up screen of some versions of the product displayed "NEIRA 4L LIPO LASER" in 2004 and 2005.  The 2005 and 2006 Operation and Maintenance Manuals, however, say that the "LCD display will illuminate with the words 'Neira 4L Laser'" when a user turns on the power.

Shanks asserts that Erchonia has affixed "lipolaser" to the keypad of its product from 2006 to date.  Yet, Erchonia provides no documentary evidence of this assertion, and in his deposition Shanks testified that a photograph of a lipolaser that shows no use of the term "lipolaser" is the version of the lipolaser that

---

[7] Meridian's evidence shows that the term did not appear on a lipolaser Dr. Caryl Mussenden purchased from Erchonia on March 3, 2004.  Although Dr. Mussenden's receipt shows the words "Lipo Laser," neither the laser itself nor any of the marketing materials Dr. Mussenden received along with the laser used the term "lipolaser."

Erchonia used in "2006-ish" and is the lipolaser Erchonia "is currently doing."  In 2008, Erchonia executives had internal discussions about replacing the manual's references to "Neira 4-L" with "LipoLaser," and reprogramming its lipolaser so its LCD display would show "LipoLaser."

Erchonia's Trademark Applications for its Lipolaser

On October 24, 2005, Erchonia filed a trademark application with the U.S. Patent and Trademark Office ("PTO") to register the term "Neira 4-L" in connection with its lipolaser.  The PTO registered this mark on October 10, 2006.

On January 10, 2006, Erchonia filed an application with the PTO to register the term "lipolaser" as a trademark in connection with its lipolaser.  In July 2007, following its publication, Meridian filed an opposition with the Trademark Trial and Appeal Board.  Meridian's opposition argues that Erchonia's description of the product in its application as a "laser[] for surgical, medical and chiropractic therapy" failed to specify the primary purpose of its product.  In light of the product's specific purpose -- use in liposuction and lipoplasty -- Meridian argues that the term is descriptive and not deserving of trademark protection.

Meridian's Use of "Lipolaser"

     Meridian Co., Ltd. ("Meridian Co.") is a Korean
manufacturer; Meridian America Medicals, Inc. is a California
corporation that serves primarily as the North American sales
agent for Meridian Co.'s products; Meridian Medical Co.
("Meridian Medical") is a Canadian corporation that also serves
as a sales agent for Meridian Co.  Meridian Co. first used the
term "lipolaser" in a July 11, 2005 press release that said:
"Meridian Co. Ltd. . . . is very pleased to announce it has
entered into an exclusive distributorship agreement with a
Korean medical equipment distributor . . . for its new product,
the Lipo-Laser on June 30, 2005."  All Meridian defendants have
sold an instrument with the term "lipolaser" affixed to it to
U.S. doctors and health care professionals.


Meridian's Use of Dr. Neira's Photographs

     Dr. Rodrigo Neira, a cosmetic surgeon, conducted research
sponsored by Erchonia and others to demonstrate the efficacy of
low-level lasers to doctors.  Neira published the results of
this research in an article he co-authored, entitled <u>Fat
Liquefaction: Effect of Low-level Laser Energy on Adipose
Tissue</u>, in the September 2002 edition of the journal Plastic and
Reconstructive Surgery.  This article concludes that low-level
laser energy causes fat to migrate to the outside of a fat cell.

11

The article included photographs from Neira's study ("the Neira Photographs") illustrating this effect.  An acknowledgment at the end of this article thanks, among others, "Steve Shanks of Majes-Tec Innovations for the donation of the Erchonia lasers – without his help this investigation could not have been completed."[8]

Meridian Co. purchased the Neira Photographs from the publisher and copyright owner, Lipincott, Williams, & Wilkins. Meridian subsequently displayed the Neira Photographs on marketing materials for its lipolaser.

DISCUSSION

Following the completion of discovery, Meridian moved on January 30, 2009 for summary judgment on each of Erchonia's three claims: (1) false designation of origin, false description and false advertising under Section 43(a) of the Lanham Act; (2) common law trademark infringement, passing off, and unfair competition; and (3) trademark dilution, blurring and tarnishment, pursuant to N.Y. Gen. Bus. Law Section 360-l.  This motion became fully submitted on March 3, 2009.  Erchonia has moved to strike certain evidence on which Meridian has relied, and has moved, as well, for partial summary judgment.  Because Meridian has shown that it is entitled to summary judgment even

---

[8] Erchonia is the corporate successor to Majes-Tec.

without the disputed evidence, Erchonia's motion to strike is denied as moot.  Erchonia's motion for partial summary judgment is also denied.[9]

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Sista v. CDC Ixis N. Amer., Inc., 445 F.3d 161, 169 (2d Cir. 2006).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings.  Fed. R. Civ. P. 56(e); accord Sista, 445 F.3d at 169.

A.  False Designation

Meridian argues that "lipolaser" is not a protectable mark under Section 43(a) of the Lanham Act because it is a

---

[9] Erchonia moved for summary judgment on its Lanham Act and common law trademark infringement claims.

descriptive or generic term and has acquired no secondary

meaning.  Section 43(a) imposes civil liability on

> [a]ny person who, on or in connection with any goods
> or services . . . uses in commerce any word, term,
> name, symbol, or device, or any combination thereof,
> or any false designation of origin, false or
> misleading description of fact, or false or misleading
> representation of fact, which --
> (A) is likely to cause confusion, or to cause mistake,
> or to deceive as to the affiliation, connection, or
> association of such person with another person, or as
> to the origin, sponsorship, or approval of his or her
> goods, services, or commercial activities by another
> person[.]

15 U.S.C. § 1125(a)(1)(A).  To succeed on a Section 43(a)

trademark infringement claim, a plaintiff must establish both

(1) that its trademark is entitled to protection and (2) that

the defendant's mark is likely to confuse consumers as to the

origin or sponsorship of its product.  Virgin Enters., Ltd. v.

Nawab, 335 F.3d 141, 146 (2d Cir. 2003).  If the party asserting

exclusive rights in a trademark does not own a registered

trademark, it bears the burden of establishing trademark

validity.  Murphy Door Bed Co. v. Interior Sleep Systems, Inc.,

874 F.2d 95, 100 (2d Cir. 1989).

　　　"The strength of a trademark in the marketplace and the

degree of protection it is entitled to are categorized by the

degree of the mark's distinctiveness in the following ascending

order: generic, descriptive, suggestive, and arbitrary or

fanciful."  Gruner + Jahr USA Publishing v. Meredith Corp., 991

F.2d 1072, 1075 (2d Cir. 1993).  As a policy matter, "trademark law accords broader protection to marks that serve exclusively as identifiers and lesser protection where a grant of exclusiveness would tend to diminish the access of others to the full range of discourse relating to their goods."  Virgin, 335 F.3d at 147-48.  A suggestive mark, "as might be expected, suggests the product, though it may take imagination to grasp the nature of the product," Gruner, 991 F.2d at 1076, whereas a descriptive mark "forthwith conveys an immediate idea of the ingredients, qualities, or characteristics of the goods." Bernard v. Commerce Drug Co., 964 F.2d 1338, 1341 (2d Cir. 1992) (citation omitted).  In other words, a mark may be descriptive "if it describes the purpose or utility of the product."  Id.  A mark must be considered in relation to the goods it identifies when the category determination is made.  For example, "[t]he word 'apple' would be . . . suggestive when used in 'Apple-A-Day' on vitamin tablets, [and] descriptive when used in 'Tomapple' for combination tomato-apple juice."  Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1041 (2d Cir. 1992) (citation omitted).

A descriptive mark may be protected only if it has acquired secondary meaning, while a suggestive mark is considered inherently distinctive and may be protected without a showing of secondary meaning.  Gruner, 991 F.2d at 1076.  Secondary meaning

"is a term of art referencing a trademark's ability to identify the source of the product rather than the product itself." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 167 (2d Cir. 2007) (citation omitted).  It "attaches when the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business."  Time, Inc. v. Petersen Publishing Co., 173 F.3d 113, 117 (2d Cir. 1999) (citation omitted).  "The existence of secondary meaning is a question of fact, with the burden of proof on the party claiming exclusive rights in the designation."  Bristol-Myers Squibb Co., 973 F.2d at 1041 (citation omitted).  Factors that are considered in determining whether a mark has developed secondary meaning include "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use."  Genessee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 143 n.4 (2d Cir. 1997) (citation omitted).  The Second Circuit has warned that "[t]he careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment."  Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 169 (2d Cir. 1991).

The "lipolaser" mark is descriptive as a matter of law. Erchonia's lipolaser is a laser designed for use in lipoplasty and liposuction.  No leap of imagination is necessary to discern the general purpose of the product identified by the term "lipolaser."  Although Erchonia argues that its product uses new laser technology that differs significantly from the traditional definition of the term "laser," as the Second Circuit noted in a case where the mark in question described "the general use . . . to which the product or service is put," Bernard, 964 F.2d at 1341, "it is not necessary . . . that the term also describe the specific . . . characteristics of the product . . . in order for the term to be descriptive."  Id. (holding that "Arthriticare" was a descriptive mark for a topical arthritis gel); see also Papercutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 563 (2d Cir. 1990) (holding "Papercutter" to be a descriptive mark for a corporation selling paper designs and ornaments).  It is not necessary, therefore, that a mark evoke in a customer's mind a precise vision of the product it identifies so long as the mark conveys "an immediate idea" of some characteristic or attribute of the product.  Bernard, 964 F.2d at 1341 (citation omitted).

Erchonia has failed to raise a question of fact as to whether "lipolaser" has acquired secondary meaning.  It has offered no consumer survey evidence or evidence of unsolicited media coverage.  Erchonia's limited physical evidence shows only

sporadic and infrequent use of the term "lipolaser" in
association with its product, which was often marketed with
other prominent marks.  When Erchonia used the term "lipolaser,"
it represented the term inconsistently as LIPO LASER, LipoLASER,
Neira**4L**[TM] lipoLASER, Neira 4L[TM] LipoLASER[TM], and Lipo**LASER**[TM]
Medical Laser.  In contrast, Erchonia used other marks, such as
its E Logo, in a consistent manner.  Erchonia's business records
show little proof of advertising expenditures on promotional
materials bearing the term "lipolaser" in a trademark sense, or
revenue from sales of items bearing such a mark on the packaging
or on the instrument itself.  Shanks's blanket assertion that
Erchonia has used the term "lipolaser" in connection with its
product continuously since 2001 is insufficient to raise a
question of fact since the assertion is contradicted by his own
deposition testimony as well as by documentary evidence.

Erchonia makes essentially three arguments in addition to
Shanks's assertion to support a finding of secondary meaning.
Erchonia argues that Meridian's attempts to plagiarize the term
"lipolaser" require the conclusion that the term has a secondary
meaning.  While copying a mark, particularly if it is shown to
be intentional copying, can provide evidence of secondary
meaning, see Bristol-Myers Squibb, 973 F.2d at 1042 ("Although
imitative intent can help support a finding of secondary
meaning, it does not necessarily mandate one." (citation

omitted)), without sufficient evidence that Erchonia used the word "lipolaser" in a trademark sense, there is little probative value to another party's use of a descriptive term on its competing product.

Erchonia claims that it has spent over $1 million marketing and advertising its lipolaser and has made over $4 million from sales of the product. This carries little weight because Erchonia has not shown that these marketing or sales figures are linked to advertising of the product as the "lipolaser" or an instrument bearing the mark "lipolaser."

Erchonia argues that the PTO examiner's preliminary approval of "lipolaser" for publication should be accorded significant weight. This argument also fails, because the PTO's approval for publication is only a preliminary determination. Cf. Murphy Door Bed Co., 874 F.2d at 101 (a final determination by the PTO and the Trademark Trial and Appeal Board is to be accorded "great weight"). Erchonia has thus failed to raise a question of material fact as to whether "lipolaser" has acquired secondary meaning. Meridian's motion for summary judgment on the Lanham Act Section 43(a) claim is accordingly granted.

B.   Common Law and N.Y. Gen. Bus. L. Section 360-l Claims

Erchonia's common law and N.Y. Gen. Bus. L. Section 360-l claims fail for the same reasons as does the plaintiff's Lanham

Act claim: Erchonia owns no rights to the mark "lipolaser."  As the Second Circuit has observed, the common law claim of unfair competition "shares many common elements with the Lanham Act claims of false designation of origin and trademark infringement."  W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 576 (2d Cir. 1993).  One of the common elements is proof of ownership of a protectable mark.  Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) ("To prevail on its trademark infringement and unfair competition claims, [the plaintiff] must prove that [the mark in question] is a protectable trademark.").  Erchonia's unfair competition claim therefore also fails.

Interpreting N.Y. Gen. Bus. L. Section 360-l,[10] the Second Circuit has noted that "New York law accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive."  N.Y. Stock Exch., Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002).  Since "lipolaser"

---

[10] Section 360-l of the New York General Business Law provides:
    Likelihood of injury to business reputation or of
    dilution of the distinctive quality of a mark or
    trade name shall be a ground for injunctive relief in
    cases of infringement of a mark registered or not
    registered or in cases of unfair competition,
    notwithstanding the absence of competition between
    the parties or the absence of confusion as to the
    source of goods or services.
N.Y. Gen. Bus. Law § 360-l.

has acquired no secondary meaning and is not inherently

distinctive, Erchonia's New York statutory claim also fails.

Meridian therefore prevails on its motion for summary judgment

with respect to Erchonia's common law and statutory trademark

claims.


D.  False or Misleading Advertising

     In its false advertising claim, Erchonia's complaint

asserts that the Meridian defendants "wrongfully used data and

research developed by and for Plaintiff as if it were their own

and have used these materials to falsely advertise their

products."  In opposing summary judgment, Erchonia identifies

that data and research as the Neira Photographs.[11]

     Section 43(a)(1)(B) of the Lanham Act provides:

     Any person who, on or in connection with any goods or
     services, or any container for goods, uses in
     commerce any word, term, name, symbol, or device, or
     any combination thereof, or any false designation of
     origin, false or misleading description of fact, or
     false or misleading representation of fact, which --
     in commercial advertising or promotion, misrepresents
     the nature, characteristics, qualities, or geographic
     origin of his or her or another person's goods,

_____

[11] Erchonia argues that this false advertising claim should also
include statements Meridian made about how its own lipolaser
works, how effective it is, whether it has FDA approval, and who
has endorsed it.  Because Erchonia gave Meridian no notice of
these claims until Shanks's October 3, 2008 deposition,
Locander's expert report dated October 27, and the responses to
interrogatories served on November 17, and fact discovery closed
on October 10, 2008, these new claims are rejected as untimely
and shall not be considered.

> services, or commercial activities, shall be liable
> in a civil action by any person who believes that he
> or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(B).  "A claim under the Lanham Act for

false advertising requires allegations that: (1) the

advertisement is literally false . . ., or (2) although the

advertisement is literally true, it is likely to deceive or

confuse consumers."   Societe Des Hotels Meridien v. LaSalle

Hotel Operating P'ship, L.P., 380 F.3d 126, 132 (2d Cir. 2004)

(citation omitted).  Literally false statements include

statements that are false by necessary implication.  Time Warner

Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158 (2d Cir. 2007)

("If the words or images, considered in context, necessarily

imply a false message, the advertisement is literally false.").

When an advertisement is shown to be literally false, "consumer

deception is presumed, and the court may grant relief without

reference to the advertisement's impact on the buying public."

Id. at 153 (citation omitted).  To be actionable, a false

representation must also "misrepresent[] an inherent quality or

characteristic of the product."  S.C. Johnson & Son, Inc. v.

Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001) (citation omitted).

    To find that an advertisement, while not literally false,

is nonetheless likely to deceive or confuse customers and is an

implicitly false advertisement, "a district court must rely on

extrinsic evidence of consumer deception or confusion."  Id.

(citation omitted).  If the challenged advertisement relies on scientific studies, "the plaintiff must demonstrate that such [studies] are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made."  McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991) (citation omitted).

Erchonia has not presented sufficient evidence to raise a material question of fact as to whether Meridian's use of the Neira Photographs constituted false advertising.  Erchonia has not produced extrinsic evidence showing that the Neira Photographs have led to consumer confusion, so it cannot raise a question of material fact as to whether Meridian's use of these photographs constituted implicitly false advertisements.  Nor has Erchonia raised a question of material fact as to whether Meridian's use of these photographs constituted literally false advertisements.  First, Erchonia has not raised a question of fact as to whether the photographs misrepresent the process by which the Meridian product works.  Erchonia makes only conclusory assertions that Meridian's laser does not have the same effect on fat cells as is shown in the Neira Photographs, and its own expert could not explain whether or how the Neira Photographs are unrepresentative of the results produced by Meridian's lipolaser.  Moreover, Erchonia has neither claimed nor proven that it owns Neira's underlying research or the

associated photographs.  Erchonia having failed to raise a
question of fact showing that Meridian's advertisements were
either implicitly or literally false, Meridian is entitled to
summary judgment on this claim.

CONCLUSION

     Meridian's January 30, 2009 motion for summary judgment is
granted.  Erchonia's January 30, 2009 motion for partial summary
judgment and its February 24, 2009 motion to strike certain
evidence are denied.  The Clerk of Court shall enter judgment
for the defendants and close this case.

     SO ORDERED:

Dated:    New York, New York
          June 1, 2009

                                   _____
                                        DENISE COTE
                                   United States District Judge

24